FRISCHKORN REAL ESTATE CO. *v.* HINCKLEY.

1. BROKERS—WHEN BROKER EARNS COMMISSION.
   A real estate broker is entitled to the commission agreed upon in the contract when he has produced a purchaser ready, able, and willing to make the first payment and meet the other terms of the contract.

2. SAME—TESTIMONY THAT PROSPECTIVE PURCHASER COULD NOT MEET TERMS OF CONTRACT ADMISSIBLE.
   In an action by a real estate broker for his commission, where the prospective purchaser never met the terms of the contract by paying all of the down payment, the trial court was in error in rejecting her testimony to the effect that she was unable financially to make the down payment and that she had a secret agreement with the broker that she would never be called on to do so, but that he would resell for her at a profit.

3. SAME—EXTENSION OF TIME FOR DOWN PAYMENT—WAIVER.
   Where the contract provided that the broker was to receive his commission when the deal was closed, and it was never closed because the prospective purchaser paid only part of the down payment, *held*, that the seller, by extending the time for paying the balance of the down payment, did not waive his right to insist on payment of the full amount before becoming liable for the commission.

Error to Wayne; Smith (Guy E.), J., presiding. Submitted April 10, 1924. (Docket No. 39.) Decided June 2, 1924.

Assumpsit by the Frischkorn Real Estate Company against James C. Hinckley for a commission on the sale of real estate. Judgment for plaintiff on a directed verdict. Defendant brings error. Reversed.

On performance by a real estate broker of his contract to find a purchaser or effect an exchange of his principal's property which will entitle him to commissions, see note in 44 L. R. A. 593.

*Younglove & Chockley,* for appellant.

*Frank N. Renaud,* for appellee.

McDONALD, J.    This is an action to recover a commission for the sale of real estate.    The defendant was the owner of property at No. 755 Edison avenue, Detroit, Michigan, which he desired to sell.    Mr. Sharpe, an agent of the plaintiff, went to him and represented that he had a prospective purchaser for the property.    Preliminary arrangements were agreed upon as is evidenced by the following receipt:

"Seller's receipt.

                    "Detroit, February 9, 1920.
   "Received of the Frischkorn Real Estate Co., Inc., $200 (two hundred dollars) as deposit and first payment on the purchase, by their client, of house at No. 755 Edison avenue, Detroit, Mich., at a total price of $23,000 (twenty-three thousand dollars) to be paid as follows: $8,000 (including this deposit) when deal is closed, and the balance 1 per cent. or more monthly including interest at 6 per cent., with option to purchase for $21,500 cash to $7,500 mortgage.
   "I agree to deliver land contract for the above property as per conditions on the back hereof at the office of the Frischkorn Real Estate Co., Inc., 101 Fort street west, and to close the deal within 10 days from receipt of abstract brought to date not less than 30 days from date, and will pay said company 3 per cent. commission when deal is closed.
                          "JAMES C. HINCKLEY,
                              371 Vicksburg ave.
"Made in duplicate
    and accepted by
    Frischkorn Real Estate
    Co., Inc.,
        "Per W. SHARPE."

When the balance of the down payment of $8,000 became due the purchaser, Mrs. Foreman, informed the defendant that she was unable to make the payment, and requested an extension of time in which to

do so. The defendant gave her 30 days on the conditions shown in the following writing:

"3-4-1920.

"Received from Mrs. Minnie Foreman $2,800 to apply on first payment No. 755 Edison avenue, Bal. of first payment of (8,000) to be paid on or before 30 days from date. Bal. to mortgage on or before 90 days from date.

"J. C. HINCKLEY,
"MINNIE FOREMAN."

A few days before the expiration of this extension the defendant wrote to the plaintiff insisting that the deal must be completed within the time limited or be declared off, as he would not wait any longer to accommodate their client. In reply the plaintiff demanded payment of the commission, claiming that it had proof of the fact that Mrs. Foreman had resold the property. It was the defendant's claim that Mrs. Foreman was never able to make the $8,000 down payment; that the deal with her was not consummated; that when the extension of time had expired she told him of a secret agreement with the broker in which it was understood that she would not be required to pay more than $200 as a first payment; that he would resell the property at a profit of $2,500 before the time came for her to close the deal, and that when he learned this he returned to her the $3,000 which she had paid and that he afterwards sold the property to another party through another broker. The trial court refused to receive evidence of the secret agreement and directed a verdict for the plaintiff in the sum of $741.75 on the ground that when the defendant accepted a payment of $2,800 from Mrs. Foreman and extended the time for paying the balance, he assumed responsibility for the sale, made a binding contract with her and became indebted to the plaintiff for the commission. The defendant brings error.

By the terms of the contract the plaintiff was to receive its commission when the deal was closed. The deal was not to be closed until the $8,000 was paid. The fact that the sale failed of consummation would not of itself mean that the plaintiff had not earned the commission. The plaintiff was entitled to the commission if it produced a purchaser ready, able and willing to make a payment of $8,000 and meet the other terms of the contract. Did the plaintiff do this? On the trial the defendant produced the prospective purchaser as a witness and sought to show by her that she was not ready, willing and able to make the down payment and enter into the contract. She offered to testify that she had an agreement with the broker that she would not be required to invest more than $200 in the property. It was her claim that she did not want to buy; that she was financially unable to make the payments; that she so informed the broker and that he assured her that it would not be necessary. The court refused to receive her testimony. In this he erred. It went to the good faith of the broker and tended to show that he had not produced a purchaser ready, willing and able to buy on the defendant's terms. The plaintiff, through its agent, Mr. Sharpe, represented to the defendant that it had a purchaser who was willing and able to consummate the deal with him. Assuming that Mrs. Foreman is correctly stating the facts the plaintiff knew that she could not make the necessary payment. At any rate she did not make the $8,000 down payment and the deal was not closed. In granting Mrs. Foreman an extension of time and in accepting $2,800 to be applied on the down payment, the defendant did not waive his right to insist on payment of the full amount. He would not become liable for the commission unless the deal was closed or unless he refused to close it with a pur-

chaser produced by the plaintiff ready to comply with the terms of the sale. We think that the circuit judge should have admitted the testimony as to the alleged secret agreement and should have submitted the issue thus presented to the jury.

The judgment is reversed and a new trial granted. The defendant will have costs.

CLARK, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.